**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**ANGELA EDWARDS**                                                                                   **PLAINTIFF**

**V.**                                                    **CAUSE NUMBER: 3:25-cv-00128-JDM-RP**

**PANOLA COUNTY, MISSISSIPPI**                                                    **DEFENDANT**

## ORDER AND MEMORANDUM OPINION

Before the Court is defendant Panola County, Mississippi's Motion for Summary Judgment. [64] Plaintiff Angela Edwards sued Panola County. She brought two claims, one under Title VII of the Civil Rights Act of 1964 and another under 42 U.S.C. § 1981. Edwards, a black woman, claimed Panola County did not hire her as county administrator due to her race. Panola County instead hired Sara Russo, a white woman, for the position.

But Edwards's Title VII claim fails because the Panola County Board of Supervisors had non-discriminatory reasons for hiring Russo over Edwards. Russo—like the previous county administrator—was an experienced attorney. And she was also the Board's second choice when it hired the previous administrator. While Russo was an attorney, Edwards was the city clerk in Sardis. Though Edwards had municipal administration experience, the Board believed she had mishandled car tag and insurance issues with Sardis police cars.

After review, the Court finds Edwards has not shown that these non-discriminatory reasons for hiring Russo were pretext for racial discrimination. So Panola County is entitled to summary judgment on Edwards's Title VII claim.

Considering Edwards's § 1981 claim, she did not assert it against the municipality via 42 U.S.C. § 1983 as required. Edwards concedes this failure. So Panola County is likewise entitled to summary judgment on Edwards's § 1981 claim.

Panola County's Motion for Summary Judgment is **GRANTED**.

### Facts

In 2016, Panola County accepted applications for county administrator. Russo was one of the finalists along with Kate Victor. The Board of Supervisors hired Victor who became Panola County Administrator from 2016 to 2024. The Board chose Victor over Russo in part because Victor had an accounting background while Russo had an engineering background. But both Victor and Russo were attorneys. And Russo was Panola County supervisor John Thomas's first choice for administrator in 2016.

When Victor left the county administrator position in 2024, Supervisor Thomas contacted Russo and asked her to apply again. By that time, Russo had become a special education teacher for several years. But for fifteen years before teaching, Russo practiced law. Russo had graduated first in her law school class. And as a lawyer, she had budgeted multimillion dollar product liability cases. She also had worked for two chemical engineering companies managing crews and budgets. And in her undergraduate chemical engineering major, Russo held a 4.0 GPA.

Edwards also applied for county administrator in 2024. The departing Victor told Edwards about the opening because she previously discussed hiring Edwards as assistant county administrator. When Edwards applied, she had been municipal clerk of Sardis since 2017. Edwards had a background in school administration. And before that, Edwards was a legal secretary for ten years. She also took some legal classes, though she did not have a law degree.

2

In March 2024, the Board interviewed three candidates—Russo, Edwards, and a third applicant. Of the three interviewees, Russo and Edwards had the strongest interviews. After interviews and before the Board voted, Board President Cole Flint contacted candidate references. And Supervisor Flint heard from one of Edwards's references—the Sardis Mayor—that Edwards had failed to renew tags and insurance for Sardis police vehicles. On March 19, Supervisor Flint texted this to the other Board members. Supervisor Chad Weaver confirmed the tag and insurance issue with the former Sardis Police Chief and relayed that to the Board.

Though word among Board members was that Edwards failed to renew city vehicle tags and insurance, Edwards disputes this. According to Edwards, Supervisor Flint misrepresented to the Board what the Sardis Mayor said. She provides the Sardis Mayor's affidavit. The Sardis Mayor attests he told Supervisor Flint only one new police car had not been insured. And it was because the Police Chief failed to notify Edwards about the new vehicle. The Sardis Mayor also wrote a letter to the Board clarifying this. But three supervisors did not receive the letter until well after the Board voted for Russo.[1]

On April 1, 2024, the Board voted three-to-two to hire Russo. Supervisors Flint, Weaver, and Thomas, white men, voted for Russo. Supervisors Earl Burdette and Fred Butts, black men, voted for Edwards. Those who voted for Russo cited her legal career, work experience managing large budgets, and strong interview for why they supported her. They also cited the Sardis police tag issue as why they did not vote for Edwards. Of the two Edwards voters, Supervisor Butts believed both Edwards and Russo could have done the job. And he did not believe a legal

---

[1] Supervisor Fred Butts did not receive the letter until after the Board had already voted for Russo. So he did not immediately present it to the Board.

3

background was important for county administrator. Supervisor Burdette testified that he did not consider the purported Sardis tag issue a major factor, when voting for Edwards.

After the Board hired Russo, Edwards spoke to Supervisor Burdette who allegedly told her about a conversation Burdette claimed he had with local reporter Jeremy Weldon. In that conversation, Supervisor Burdette claimed Weldon told him he believed Supervisor Weaver's district would not allow Weaver to vote for a black person as county administrator. Weldon also allegedly spoke with a Sardis Alderman. According to the Alderman, Weldon told him that Supervisor Weaver *said* his district would not allow him to vote for Edwards. But Weldon flatly denies that. In an affidavit, Weldon asserts that Supervisor Weaver did not tell him that he could not vote for Edwards based on her race.

Citing these allegations, Edwards sued Panola County for race discrimination. Panola County moved for summary judgment on both Edwards's Title VII and § 1981 claims. It argues the Title VII claim should be dismissed because Edwards cannot show the County's reasons for hiring Russo were pretext for racial discrimination. Panola County also argues that Edwards cannot bring a § 1981 claim against a municipality without asserting the claim via § 1983, which Edwards failed to do. And after review, this Court agrees.

On both of Edwards's claims, Panola County has shown "that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Specifically, Edwards has not shown pretext for racial discrimination to sustain her Title VII claim. And though she was required to do so, Edwards also failed to bring the § 1981 claim against the County under § 1983.

4

**Discussion**

## I.      *Race Discrimination under Title VII*

In Title VII cases like Edwards's—with no direct evidence of intentional race discrimination—the *McDonnell Douglas*[2] burden-shifting framework[3] is used to analyze the plaintiff's claim.  *Ayorinde v. Team Indus. Servs. Inc.*, 121 F. 4th 500, 507 (5th Cir. 2024).

There are three steps to the analysis.  "Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a prima facie case of discrimination.  If she does so, the burden then shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its action.  If the defendant can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual."  *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (quoting *McDonnell Douglas*, 411 U.S. at 802).

### A.      *Edwards makes a prima facie case.*

Panola County does not dispute that Edwards has made a prima face case under Title VII for summary judgment purposes.  And the Court also finds as much.  So the burden shifts to Panola County to articulate a legitimate reason why it hired Russo instead of Edwards.

### B.      *Panola County provided non-discriminatory hiring reasons.*

At this point, the burden that Panola County must meet is "one of production, not persuasion . . . [involving] no credibility assessment."  *Russell v. City of Tupelo, Miss.*, 544 F. Supp. 3d 741, 754 (N.D. Miss. 2021) (internal quotation marks omitted) (quoting *Mengistu v. Miss. Valley*

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] This test "undeniably plays a prominent role in Title VII cases at summary judgment."  *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring).  It is "the framework that 'courts typically apply' 'to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment.'"  *Id.* at 321 (quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016)).

*State Univ.*, No. 4:16-cv-65-SA-JMV, at *2 (N.D. Miss. Sept. 5, 2017)). And the Court finds Panola County has provided a nondiscriminatory reason for not hiring Edwards.

Panola County produced affidavits from four of the five supervisors. Supervisor Thomas originally preferred Russo to Victor in 2016. And he voted for Russo over Edwards citing Russo's intelligence and background in law and engineering. Supervisor Weaver said he encouraged Edwards to initially apply based on his acquaintance with Edwards and her family. But when Supervisor Weaver learned about the Sardis police car tag issue, he gave Russo the edge over Edwards. Supervisor Flint voted for Russo based on her experience managing large budgets and personnel. He felt he could not vote for Edwards because he believed she played a role in not obtaining tags and insurance on Sardis police vehicles—something he feared opened Sardis to potential legal liability. Supervisor Butts believed both Russo and Edwards could do the job. But he ended up voting for Edwards.

Based on these affidavits, the three supervisors that voted for Russo were swayed both by Russo's legal and career accomplishments and by Edwards's purported mistake as Sardis municipal clerk. Russo's qualifications are also non-discriminatory support for the Board's conclusion she would be a better fit than Edwards. Indeed, she—just like the previous administrator—is also a lawyer.

Further, Edwards's alleged poor performance as Sardis clerk is a legitimate, non-discriminatory reason for some supervisors to have favored Russo over Edwards. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005) (holding that employer's stated grounds for terminating employee—poor sales—was non-discriminatory).

Based on Panola County's evidence, it has shown a legitimate, non-discriminatory reason for hiring Russo over Edwards. So the burden shifts to Edwards to show that Panola County's offered reasons were pretext for discrimination.

>    C.    *Edwards cannot show Panola County's reasons were pretextual.*

"To satisfy pretext, [Edwards] must show either that [Panola County's] proffered explanation was false or unworthy of credence or [Edwards] was clearly better qualified than [Russo]." *Knox v. PHC-Cleveland, Inc.*, 24 F. Supp. 3d 584, 592-93 (N.D. Miss. 2014) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007)). As to Edwards's burden of proof, the Court points out it is not enough that she show a mere fact issue about pretext. Rather, Edwards must show pretext by a *preponderance of the evidence*.[4] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

Edwards offers several reasons why she believes Panola County's explanations are not credible. But none of her reasons show that the County hired Russo because Edwards was black.

First, Edwards claims Russo knew before the vote that the Board would choose her. But Edwards points only to a string of text messages between Edwards and one of Russo's coworkers. In the texts, the coworker tells Edwards that Russo told a teacher, who in turn told the coworker, that Russo "thinks everything went well and the vote will go in her favor." This is not a direct statement from Russo herself. Instead, Edwards presents an alleged statement from Russo that was supposedly passed through the grapevine by two teachers before Edwards heard about it.

---

[4] Though this case is at the summary judgment stage, *McDonnell Douglas* is the method courts in this circuit use to analyze Title VII claims at this point in litigation. *See Byers*, 209 F.3d at 427 (affirming summary judgment on a Title VII claim under the *McDonnell Douglas* framework); *Franks v. City of Oxford, Miss.*, No. 3:22-cv-00194-MPM-RP (N.D. Miss. June 10, 2024) (applying the *McDonnell Douglas* framework—including the plaintiff's preponderance burden to show pretext—at the summary judgment stage).

This evidence is hearsay and cannot be considered on a summary judgment motion.  *See Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (holding that though hearsay may be impeachment evidence, it is not competent evidence for summary judgment).  Still, even if the Court did consider these texts as competent evidence, they do not help Edwards's case by showing pretext.  What Edwards presents boils down to nothing more than Russo expressing her belief that she "thinks" her interview went well and she would be hired.  Russo's purported confidence does not show the Board voted against Edwards based on her race.  The same goes for Edwards's testimony that Weldon told her she "probably [would not] be the administrator."  Speculation about how the Board may vote does not demonstrate pretext for the Board's ultimate decision to hire Russo.

Second, Edwards argues Panola County was wrong to say Russo was more qualified than Edwards.  She emphasizes her government administration experience and ability to read statutes and interpret case law—skills several Board members thought was important.  Edwards believes Panola County discriminated against her by hiring Russo because she was *at least* as qualified as Russo.  But that argument falls short of the "high bar" of showing she was *better qualified* than Russo for the position.[5]

For disparity in qualifications to create a discrimination inference, the disparities "must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Deines v. Tex. Dept. of Protective & Regul. Servs.*, 164 F.3d 277, 280-80 (5th Cir. 1999).  And "an employer may discount both years of service and general experience in favor of specific qualifications."

---

[5] *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

*Martinez v. Tex. Workforce Comm'n-Civ. Rts. Div.*, 775 F.3d 685, 688 (5th Cir. 2014) (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010)). No party disputes that both Russo and Edwards met the posted qualifications for the county administrator job. But the Board's decision to weigh Russo's legal and managerial experience more heavily than Edwards's administrative experience does not show pretext for racial discrimination.

Third, Edwards argues that the Sardis tag issue was pretext for discrimination because the Board members knew it was just a rumor. Edwards cites the Sardis Mayor's affidavit. But "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). In other words, just because the Supervisors may have ultimately been wrong about the vehicle tags, does not mean the Supervisors' genuine concern over the issue was pretext for race discrimination.

Several supervisors testified they did not know they may have had an incorrect impression about Edwards's work as Sardis municipal clerk. The three that voted for Russo never even saw the Mayor's letter until after the vote. That's because Supervisor Butts—who received the letter— did not get it himself until *after* the Board had voted for Russo. Whether Edwards messed up the Sardis tags or not, the Board clearly believed she did. And that is a sufficient, non-discriminatory basis for preferring Russo over Edwards when voting.

Finally, Edwards points to Supervisor Weaver's alleged comment to a reporter, Weldon, that his district would not let him hire Edwards because she is black. But Edwards does not present an affidavit from Weaver about this alleged comment. Nor does she provide an affidavit from Weldon, that Weaver said this. Instead, she presents this double hearsay of Weaver's purported

9

comment by attaching an affidavit from a Sardis Alderman. Specifically, the Alderman claims that Weldon told him that Weaver told Weldon that Weaver could not vote for a black county administrator. But, again, this statement is hearsay and inadmissible summary judgment evidence. *See Fowler*, 68 F.3d at 126. And Panola County has presented competent evidence that Supervisor Weaver never told Weldon he could not vote for Edwards—Weldon's direct testimony. Edwards has not presented any competent evidence to rebut Weldon's affidavit or create a fact issue. In short, she has not established pretext for race discrimination.

Because Edwards has not produced any competent evidence to create a fact issue about pretext, Panola County is entitled to summary judgment on Edwards's Title VII claim.

## II.     *Section 1981 Claim*

Besides Edwards's Title VII claim, Panola County also moved for summary judgment on her § 1981 claim. It argues that to bring a claim against a state government under § 1981, Edwards needed to lodge its violation under § 1983. And since Edwards did not mention § 1983 in her complaint, Panola County argues her § 1981 claim fails as a matter of law. Rather than dispute Panola County's argument, Edwards says she "will withdraw her § 1981 Claim."

"[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). "Thus, plaintiffs *must* assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981." *Escamilla v. Elliot*, 816 F. App'x 919, 922 (5th Cir. 2020) (per curiam) (alteration in original).

Edwards asserted a freestanding § 1981 claim against Panola County. Her complaint contains no mention of § 1983. If her attempted withdrawal of her § 1981 claim is a concession that it fails, we need not delve further. But if she is attempting to withdraw this claim to be remedied through a later filing, the Court emphasizes Edwards "may not unilaterally withdraw [her] claim[] to avoid a negative judgment. Indeed, under Rule 41(a)(2) of the Federal Rules of Civil Procedure, a plaintiff may not voluntarily dismiss a claim after a summary judgment motion has been filed without first receiving the Court's consent." *Hill v. Concho Resources, Inc.*, 634 F. Supp. 3d 359, 362 (W.D. Tex. 2022). Edwards neither asked for nor received consent to withdraw her § 1981 claim. So the Court reviews this issue's merits. And the Court points out she presented nothing for the Court to review. Still, the law does not allow a freestanding § 1981 claim against a state actor without proceeding through § 1983. Thus, Panola County has met its burden to show no genuine dispute of material fact exists about the § 1981 claim. The Court grants summary judgment in Panola County's favor on this claim.

### Conclusion

For these reasons, Panola County's Motion for Summary Judgment [64] is **GRANTED**. Judgment will be entered in Panola County's favor. With no other claims or defendants remaining, the case shall be **DISMISSED with prejudice**.

This case is **CLOSED**. A separate judgment will issue this day.

**SO ORDERED**, this the 17th day of July, 2026.

        /s/ James D. Maxwell II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI